The fourth district appellate court of the state of Illinois has now convened. The Honorable Peter C. Kavanaugh presiding. Good afternoon. We'll call first the matter of 419-0598, People of the State of Illinois Appellee v. Brian Pruitt Appellant. For the appellant, would you please state your name for the record, counsel? Salome Kiwara Wilson. And for the appellee? David J. Robinson for the state. Thank you both. Counsel, you may proceed. Thank you, Your Honor. May it please the court. My name is Salome Kiwara Wilson, and on behalf of the Office of the State Appellate Defender, I represent Brian Pruitt. As this court is aware, leading up to this oral argument, the parties both filed several motions, and in a May 4th order, this court instructed the parties to address the motions and the effect of People v. Williams and Jones v. Mississippi at this oral argument, and I plan to do that as I go through my arguments, and if there are any questions, I will answer them as I go along. I will start with my third argument, which is that Brian Pruitt received the ineffective assistance of counsel when counsel advised him to elect to proceed under the 1995 first-degree sentencing statute as opposed to the 2019 first-degree murder sentencing statute, which was more, which mitigated his sentence and under which he would not have been eligible for a life sentence. Counsel's advice to his client over the election here seemed to have been guided by the assumption or by the belief that Mr. Pruitt would lose his sentencing credit, ability to earn as opposed to the 1995 statute. However, there was no right to elect when it came to the truth in sentencing statute because the statute is very clear that it only applies to offenses that were, that occurred on or after June 19th, 1998. Brian's offenses occurred in 1995, and therefore, even if he had elected to proceed under the 2019 first-degree murder sentencing statute, he would still have been able to serve only 50 percent of his offense had he received a term of years as opposed to a natural life sentence. Another consideration that might have guided counsel's advice, which was not a strategic decision, was to go with it because of consecutive sentencing or extended sentencing under the 1995 statutes versus the 2019 statute. But before I get into that, counsel's choices in summary were that counsel felt the need to proceed in a way to choose all or nothing, to pick all the statutes from 1995 or all the statutes from 2019. And as it is clear from the truth in sentencing statute, one doesn't necessarily affect the other in that once you elect the first-degree sentencing statute from 1995, you have to then proceed or that the other statutes are affected. That is not how the right to elect works. It is, depends on each particular statute and the effective date of the statute and whether or not the sentence that the defendant faces is mitigated by the changes, if any, that have occurred under each statute. Under the extended sentencing statute, there was no change, for example, and therefore, Brian, the choice to proceed under the 2019 statute would not have been affected by the extended sentencing because there was no right to elect there. As for the consecutive sentencing statute, the changes there actually made Brian's sentence worse had he been sentenced under the 2019 version as opposed to the 1995 version. That is because he was not eligible under the 1995 statute to be sentenced to consecutive sentencing, but under the 2019 statutes, it was a mandatory sentence. Therefore, there was no strategic choice for counsel to proceed under the 1995 statute as opposed to the 2019 and certainly no strategic choice to advise his counsel, his client to so proceed. This is more so after the court made a decision that it would consider, that apprendee did not apply to the case and would consider whether or not the murders were committed in a brutal and heinous manner indicative of wanton cruelty. After that decision, it was clear that the court found that it could sentence Brian to a life sentence, and at that point, counsel should have elected to proceed under the 2019 statute to completely take the life sentence off the table. As the state's only response to this argument is that there was no right to elect. However, this was something that was discussed below. All the parties and the court agreed that Brian had a right to elect, which sentencing statute applied, and the parties proceeded that way. So the state's argument fails on that point. Secondly, in People v. Williams, this- Laura Wilson, let me ask you a question. What impact does the fact that we have two murders here have on our analysis as it relates to the, you know, 2019 versus, you know, the version when he was convicted? So, the fact that there's two victims does not affect the right to elect. You have to look at whether or not he was still eligible for a life sentence, or if his sentence was mitigated. So in 2019, even with the two, with both victims, he's not eligible for a it's still more beneficial to proceed under the 2019 statute. Does that answer your question? Yes, thank you. Councilman, I have a question as well. Yes. With regard to the decision of the Supreme Court of Illinois in Davis, excuse me, where it appears that the court specifically contemplated that a minor may be sentenced to life in prison if the sentence is at the trial court's discretion rather than mandatory, and you seem to be suggesting that, if I understand you correctly, the relevant portion of Davis is obiter dictum. Is that correct? I believe that's how I phrased my reply brief, yes. What does that mean? Are we supposed to disregard what the Supreme Court of Illinois said? No, the court should not disregard what the Supreme Court of Illinois says. However, it does not, what the court said in Davis does not affect this argument. The court's statements in Davis about the life sentence had nothing to do with what the court was ultimately deciding. That is why I referred to it as obiter dictum. However, Davis does not affect Brian's argument here. Davis's statement that a life sentence is still an applicable sentence is not wrong because if Brian elected to proceed under the 95 statute, then a life sentence was available if the court followed Miller. Under the 2019 statute, Brian is not eligible for a life sentence. I mean, Davis doesn't change that if you just look at the first degree murder sentencing statute. So Davis was not a case dealing with the right to elect and therefore does not control this issue. Also, I have a question about your contention that this case, the defendant establishes ineffective assistance of counsel because of an incorrect election by counsel on behalf of the defendant. Is that your claim? Made on behalf of the defendant, yes, because there are some sections of the record that show making this election when Brian's not even in court. For purposes of our analysis, you would have to demonstrate that your client was prejudiced by this, that there was a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different, which means that the court would have sentenced the defendant differently had the council not made this improper election that would establish the prejudice, would it not? Correct. Is that what your contention is? Yes, because had he elected to proceed under the 2019 first degree sentencing statute, Brian would not have received a natural life sentence. Would the court have had discretion to impose that? There would simply not have been any opportunity for the court to do so. Go ahead. I'm sorry, because of his age? Correct. Because of his age at the time of the offenses. What's the greatest sentence have the trial court correctly advised this council and elected the right thing for him? What's the greatest sentence that the defendant faced? 60 years. What's that based on? The first degree sentencing statute from 2019, sorry. Murder is 20 years to 60 years unless it's extended or unless the defendant is over 18 in which case the sentence can go up to life. Was a consecutive sentence available to be imposed? No. With two murders? No, not based on the fact that there was no right to elect when it came to the consecutive sentencing statute. Therefore, the statute that controlled there was the 95 statute. And under that statute, Brian was not eligible for consecutive sentence. Because murder first degree murder was not included as one of the triggering offenses for that. And he's the two in his case were committed in a single course of conduct. As I lay out in the opening brief. Did the trial court have the discretion to impose consecutive sentences for the two murders? Not under the 95 statute, no. Because the court could not do through discretion, what the statute had prohibited. And the statute had prohibited him getting a consecutive sentence. Because he committed his offenses in a single course of conduct and first degree murder was not a triggering offense in 1995. Go ahead. I might have some other questions. So when it comes to the state's response to this argument, the state has forfeited any argument that counsel was not ineffective. The state has forfeited any argument that the right to elect was not that Brian did not have a right to elect. And the state has also failed to offer any analysis why the Miller's resentencing cases are incompatible with the right to elect. And as I said earlier, in people versus Williams, this court recognized such a right in a Miller resentencing case. So case where the trial court didn't give the defendant the opportunity to make an election. Correct. Here, the opportunity was given, but you're claiming the counsel chose badly. Yes, but Williams is applicable because in its brief, the state contends that the right to elect doesn't apply in a Miller resentencing case at all. And said that no court has ventured that far. I believe something to that effect. So Williams is a case where this court has decided the direct right to elect is applicable in a Miller resentencing case. So on that, I'm trying to get this right in my head as far as Davis and the facts here in Davis, the court said that as long as the sentence is imposed at the discretion of the trial court, it's allowed a life sentence, a natural life sentence. But you're saying that that doesn't impact your claim because here, if we had gone with counsel had recommended that the defendant go with the 2019 statute, he would not have been eligible for a natural life sentence at all. Yes, your honor. And it's, um, let me put it differently. So the life sentence has to be pegged to a stretch statutory provision. So even when Davis says that a life sentence is still an applicable sentence for a defendant, the sentences is based off of the 1991 or the 1993 statutes that the court was addressing in Davis. If you go with the 2019 first degree sentencing statute for a when they committed the offense, there is no statutory authority to peg a life sentence to the court wouldn't be able to simply say, I sentenced you to life and not have a statutory authority authorizing that sentence. Um, so when Davis Davis is simply inapplicable in this situation, um, and somewhat muddies the water because it's not, it's not, um, addressing the when he was under the age of 18 cannot be sentenced to a life sentence. Okay. Thank you. Um, I will move on to my second argument, unless any of the justices have any other questions on the first on the third argument. So in the second argument, Brian argued that this court should demand for a new sentencing hearing because his sentence was, his sentence was based on the nature of the offenses as opposed to, um, the court finding him permanently incorrigible based on a consideration of the Miller factors. And this is where the state, um, I presume would cite Jones versus Mississippi, uh, the Supreme court's latest case on, uh, Miller resentencing on Miller as a general concept. So Jones does not affect this case, but more specifically, Jones does not change the law in Illinois, in a people versus Holman, the Supreme court already reached the decision that Jones reaches in its, uh, in this decision in Jones, the court holds that Miller and Montgomery do not require a sentencing judge to make up an explicit or implicit finding of prominent incorrigibility as part of, um, it's sentencing. Uh, so in other words, that magic words, finding that Leslie says that courts do not need to make in, in, uh, in Holman in paragraph 13, uh, 39, I apologize. The Supreme court recognized that and said that notably under Miller Montgomery, unlike Miller, sorry, Montgomery does not specify what characteristics attend youth. The court that the court make findings of facts regarding a juvenile's incorrigibility. Therefore, after recognizing that the Holman court then went on to find that that finding was required after consideration of the Miller factors. And the fact that Holman came to that conclusion is not foreclosed by Jones because in Jones, the Supreme court leaves it up to the States to come up with a procedure that is required, um, it for sentencing juveniles in each jurisdiction. And in Illinois, that decision has been made through Holman and Lesby and other such cases where our Supreme court already recognized the limitations of Miller and Montgomery and chose to give more protections to juvenile defendants and said that that finding was required. However, Jones doesn't apply in this particular case because the argument isn't that the court did not make that finding here. The argument is that the court made a finding of permanent incorrigibility after considering only the nature of the offenses and not the fact that, um, Brian was beyond rehabilitation. In fact, the record shows that Brian presented ample evidence of his rehabilitation. Therefore, in this case, because the cases like page where the court focuses on the nature of the offenses, as opposed to considering all the factors that are laid out in Holman in order to make its finding of permanent incorrigibility, that is error. And the case needs to go back for a new sentencing hearing. Are there any questions regarding Jones? Well, I just want to make sure I understand again. I apologize if I'm having difficulty following all this. You're saying the defense counsel should have elected to be sentenced under the law as it was when? 2019 at the time of the new sentencing hearing. Okay. And, um, under, um, section 5-4.5-20, which deals with first degree murder and the sentences for first degree murder. Uh, what, um, what provision prohibited, if I understand you correctly, the court from imposing a consecutive sentence? I'm not sure I follow. Is that what you're saying? So the consecutive, um, sentencing statute that, uh, should be referenced is the 1995 sentencing statute, not the 2019. So counsel's choice to elect to proceed under the first degree sentencing murder statute does not affect the right to elect. Let me go back. I'm a little confused here. I want to make sure I understand. Yes. Counsel should have elected to be sentenced under which statute is your contention? The first degree murder sentencing statute from 2019. However, that choice does not affect. I'm sorry. You're referring to the first degree murder statute as it existed in 2019? Yes. That's what counsel should have elected to be sentenced under? Yes. And instead of that, he elected for the defendant to be sentenced under what? The 1995 first degree sentencing statute. Okay. Now had he elected under the 2018 sentencing statute, if I understood you correctly, even though there were two convictions of first degree murder here, the trial court was prohibited from imposing a consecutive sentence? I have to answer your question by going back one step. I apologize. Well, okay. I'm just trying to figure it out. Go ahead. Yes. So the first, the right to elect is not a blanket choice. It's, he has the right to elect any statute that is mitigating his sentence. There was a right to elect under the first degree murder sentencing statute, but not a right to elect under the consecutive sentencing statute. So the consecutive sentencing statute that applied was still the consecutive sentencing statute, whether he proceeded under the 2019 first degree murder sentencing statute or the 95. I apologize my time. Justice Stogman, did you have another question? Well, I'm not sure I yet understand. I, uh, I apologize. Uh, which is your position that under 1995 sentencing statute, the defendant could not be sentenced to consecutive sentences for first degree murder because of the fact that first would help be helpful. My answer is no, because he, the offenses in his, uh, he was convicted of occurred in a single course of conduct. So consecutive sentencing is, was not available under the 1995 statute because there was a single course of conduct correct to first degree murders. Correct. So then he should have selected that sentencing statute for the consecutive sentencing. Yes, because there was no right to elect what any, so he chose to be sentenced under the 2019 statute. He did not. That is the error. Ms. Kiara Wilson, you're saying that for the first degree murder counsel should have elected to proceed under the 2019 statute. Correct. As it pertains to whether or not consecutive sentences were available, the 95. Correct. Act applies because there was no right to elect anything else. Yes, correct. Thank you. Thank you. Thank you. Mr. Roberts. Thank you, Your Honor. Uh, and thank you, Miss Wilson. Good to see you again. May it please the court. Um, first I'd like to note, um, that various respectfully to Miss Wilson and it could be an issue with drafting on the state's part, but, um, the, the state adamantly disagrees with the, with the arguments related to, to forfeiture, uh, that, that the appellate defender has brought up in this case on each of these issues. And I think as the state goes through in response to the arguments today, I think it, that will easily be illustrated. I think justice Holder White's, um, statement at the, the, their first question regarding eligibility for life for the two murders under both the 95 election and the 2019 election, uh, really answers the question. Um, my answer under Davis and the state's position is that the judge can absolutely sentence a defendant to natural life in prison, uh, under, under an election for both statutes. And I'll tell you why under five dash eight dash one, the natural life imprisonment, uh, statute from, uh, 19, the, what amounts to the current law, um, for first degree murder, uh, one B, if the trier of fact finds beyond a reasonable doubt that the murder was accompanied by indicative of wanton cruelty. And then you go down and then it says the court shall sentence the defendant to a term of natural life. If the defendant at the time of the commission of the murder has attained the age of 18, and then you, uh, you slide down, um, to I I under C and there, and you find is found guilty of murdering more than one victim. Now all the statute says, and I'm at a bit of a disadvantage because I've actually gone through the morass of doing some of these resentencings at the trial level. So I've, I understand a lot of the confusion and that's why I apologize. And I asked for, um, a little bit of the court's indulgence with respect to, we try to simplify these issues on appeal, but the short of it is the court, just because the general assembly says that it is no longer mandatory, doesn't mean that a natural life sentence cannot be imposed. And I think that's precisely why defense counsel in this case elected the 95 statute, because if you look at the 95 statute, it's got the similar language, um, related to the shall sentence defendant to a natural term for, for multiple murders. However, under a, uh, under one, a, uh, it indicates that a term shall not be less than 20 years and not more than 60 years. And it's been my experience. And I suspect it's true in this case, but what defense counsel was trying to do and my review of the record indicates that this is precisely what defense counsel was trying to do is say, judge, this is an individual. I'm going to bring in a bunch of witnesses to testify at the re-sentencing hearing to testify about how much progress this person has made. I'm going to put my guy on to testify about all the strides that he's made in his life. And I want you to take natural life completely off the table. And once you determine that that's completely off the table, judge, all we're left with is 20 to 60. And so let's argue about how, uh, how much time he's going to get, whether, whether those are going to be served consecutively or concurrently is really irrelevant to defense counsel. At that point, what he wants to do is, is get the judge into a place where, um, the judge agrees with him that it should be somewhere far South of 60. Then they can haggle over whether it's consecutive or concurrent, and then they can start applying, um, sentencing credit. Now, none of that happened in this case because of the findings that the court made, but that doesn't mean that counsel was ineffective. And in fact, this is precisely the tack that I've experienced that, that defense counsel takes at the trial level routinely. They liked that 95 statute. They, they like the fact that if they can get the judge into a frame of mind, having showered the court with the Miller type language to, to move toward a sentence of a term of years, now they're, uh, to, to steal a phrase. Now they're sort of in the business, right? They can, they can talk to the judge about how long they're, they're going to give their client. And then they can, um, debate consecutive versus concurrent. Well, they never got there obviously here because the court determined that, Hey, we're, this is, this is a case where I believe this person in my discretion, not mandatory under the statute, not mandatory under 2019 or the 95 96 statute. But in fact, um, I believe this person is eligible for natural life based on my findings in this case. Now those findings in this particular case, Mr. Robinson, I'm sorry. Can you give me, I want to pull it up. Give me that site for the 2019, um, statute as far as the sentencing, please. Yes, your honor. Uh, seven 30 ILCS five slash five dash eight dash one. And it's a one C I I for me again to seven 35 slash what? Seven 30 ILCS five slash five dash eight dash one. And then it's a one C I I sorry, judge holder. What I probably left out. Um, the a one on the site that I gave you. Okay. Okay. And again, while you're pulling that up, the fact that the general assembly has said that when someone's under 18, all they took off the table, I call this the post Miller statute, right? So all that they did was they took off the table, the idea that you had to sentence as a, as a circuit judge, you had to sentence someone to life in prison for murdering two That's all they did. They didn't say that you could not sentence someone to natural life in prison. Um, if you make requisite findings and then that dovetails back into, uh, the question of the court's findings, which I, which I think we can debate, but clearly the court had authority to sentence, um, this person to national natural life. And that gets back to judge question. And in the follow-up on people versus Davis, where the court says, quote, a minor may still be sentenced to natural life imprisonment without parole. So long as the sentence is at the trial court's discretion rather than mandatory, that would be a totally nonsensical thing for the Supreme court to say, if they interpreted this subsection of, uh, five dash a eight dash one to mean that you could never sentence a minor to natural life. So Mr. Robinson, basically you're pointing out the fact that the statute does require the trial court to sentence a person who is at least 18 to natural life under certain circumstances, including multiple murders, but it does not prohibit it from doing so because there's no language saying that a person under the age of shall be excluded from sentencing, you know, in this manner or something like that. Is that your position? That's exactly right. Your honor. And I think that is accepted in the defense bar below, because as I said, um, and again, my experience as a, to the limited extent I have experienced as a trial lawyer, does it, I mean, isn't part of the record in this case, but I can tell you from my experience as an officer of the court, this is routinely how these defense attorneys are viewing this. And that's why they're electing these older statutes. And we've seen it time and time again on appeal. And what's the advantage of electing the older statute for them given, assuming you're correct on how they view the new one, right? Because, because they believe that their client is eligible for, as I understand it, they believe their client could potentially be statute discusses a specific term of years, the 20 to 60. And I think that they feel like they have more, um, they have a better chance of, of one at on the front end, explaining to the judge again, citing the Miller line of cases that, Hey, natural life would not be a fair thing to give to this formerly 16 or 17 year old. So let's talk about term of years. And then once you get to term of years, now they're, they're cooking with hot grease, so to speak, because then many of these folks have been in prison for 20 or 30 years. And so if you get a term of years, even if it's consecutive, a lot of these people are going to be out in short order. And that is, uh, not only is that, um, not ineffective, it's been a highly effective tack that, uh, defense council has taken in these cases. It didn't work here in Vermillion County, but nevertheless, I have no doubt that that's exactly what defense council was doing, uh, having read the record in this case. And that's why, does that get us though, still to the apprendee issue? Because if we accept what you're saying, we still have this issue of was the court appropriate in utilizing its discretion and making this determination as far as it being, you know, brutal and heinous, because obviously it was something that enhanced. That's exactly right. And that, that leads perfectly to my next point. And that's why we try to keep it as simple as possible in these line of briefs. And this is what ties into and part of the reason why we, we pulled back on our, our non-objection to, uh, what the appellate defender had filed in this case, because I felt like we were coming off the rails a little bit. There's our focus is on Davis and there's no way to read Davis and what Davis says, um, under current law. And, and if a prende applied on a resentencing, not on a sentencing, but where a defendant has exhausted his direct appeals, where this there's no, there's no claim that the defendant in this case did not, um, uh, exhaust his direct appeals. He did. This was remanded on a re sentencing, not an, not an original sentencing as part of a direct appeal. This was a resentencing and there's no way to read that line from Davis or frankly, that I think it's paragraph 43 to say anything, um, uh, and, and make these statutes and Miller and Davis, and frankly, even Jones make sense. If there, if, if this is completely prohibited by a prende to that end, I would, I would ask that if this court were to consider remanding this case because of, uh, an apprendee violation, which we adamantly oppose, but if this court were to do that, um, our recommendation to the state's attorney's office would be to seek some sort of, uh, uh, special jury to make that determination, because I just don't think there's another way to read Davis and Jones and Miller in a way that would, um, prohibit a, a re sentencing. I'm sorry, prohibit in a re sentencing, a jury for making that determination. And where you have someone who was sentenced 25, 30 years ago, it is a, it is a practical and frankly, probably legal impossibility to get that impartial jury back to make that determination. We would have to have an entirely new voir dire proceeding, like we had in the capital murder, um, uh, uh, provisions to allow them to make this finding. But frankly, I don't think that's what the Supreme court requires. And I, I certainly don't think that's what the general assembly requires. Otherwise they would have come up with something, uh, to that end with Ms. Um, Clara Wilson that in Jones, the United States Supreme court, they were very clear though, that we States can do what we want to do. We don't have to necessarily, you know, do what they're doing or, you know, what they're opposing council indicated as to these issues. Yeah, it has, but your honor, I think that that really goes to the language that's used. I think that's really what the court was focused on in Jones. I mean, we could have 30 lawyers read Jones and probably get some variation of the same color of blue, uh, from that case. But what I can tell you is our Supreme court has spoken. The general assembly has spoken. The statute is there. Um, and it outlines the findings that do have to be made. Um, I, we refer to it as a red Herring in the brief. Maybe that's fair. Maybe, maybe it's not fair, but the fact of the matter is whatever you call it, um, there really is no question here that this, that this defendant has received a fair sentence as far as Miller goes. I mean, that's not really even the argument here. I want to ask, uh, the, again, the question just as Holder White asked with regard to, um, the Apprendi violation, um, why shouldn't council have chosen to be sentenced so that he could have claimed the protections of Apprendi? Well, I mean, I think you're probably your honor respectfully presuming that defense council didn't think this through as I have, or the court has, or defense council has. I mean, um, I think defense council's entitled to that presumption that they thought through this and said, look, you know, just hypothetically, I agree with Robinson. Look, Davis has already spoken on this. Davis would be nonsensical. If my, if my guy quote, get resentenced, um, to life in prison. Uh, so you're, you're perfect. You heard, uh, Miss Kiwara Wilson, is that pronounced correctly? Okay. You heard her indicate that a, um, sentence of life in prison is not permissible under, uh, section five dash eight to one dash and your contention is it's mandatory for someone under 18, but still permissible for someone who is not under 18. Absolutely. 100%. Okay. So you think then that, um, is that why there's nothing to be gained for the defendant from the Apprendi, uh, seeming to go under Apprendi. Is that what you're saying? Well, right. It is, but, but I don't think the two things your honor that closely tied together. I mean, I, I operate on the presumption that if I'm right on the law, which I hope and think that I am that defense council would have read it the same way I do, which is, this is a resentencing. His, his appeals have been exhausted. Now defense council argued that Apprendi point below and lost. And part of the defense's argument here on appeal is it was somehow ineffective for him not to change course below. So on, on day one, he's arguing that this is an Apprendi issue. And then once the court, or I'm sorry, that it's a, uh, that he could not be sentenced to life. And then, uh, once the court rules against him to reelect, frankly, I'm not sure that the law would permit him to elect, to, to reelect once he elects what sense to what statute to be sentenced under. Is the opposing council about the possibility of consecutive sentences based upon the defendants to murder convictions? And she said, that's not permissible. If I understood her response correctly, because they were part of the same transaction or whatever. Do you agree with that? No, I don't. I mean, whenever you have um, it's, it's not the same course of events, absence specific facts. And in fact here, um, the, the reason the court specifically found that it was exceptionally brutal and heinous was because this individual at one point in time in the evening stabbed and murdered his grandmother while she slept and then testified himself that she expired while looking at him and then went to the kitchen, I believe, and lied in wait for his grandfather and then murdered him with a knife under no set of circumstances that I'm aware of in case law has any court concluded that those two would be the same course of events. Well, I mean, wouldn't it be the course of events, murder of his grandparents, knowing that he was about to be placed back in possibly in a facility. And so my grandparents are kicking me out. They don't want me anymore. So my plan, my course of conduct is to murder my grandparents. I murdered my grandmother, wait for my grandfather to get home and then murder him plan complete. Well, I think, I think that one could argue that in the broader sense of a common plan or scheme, that that would be true. But I think as a legal matter, the two individual murders are not linked, uh, uh, as they would be in a one act, one crime, uh, type of analysis. So you think in other words, what does it, if he were fired a shotgun at, uh, and the shotgun wound up killing both people, would that be, uh, what you think might be, um, the same crime for which the, uh, consecutive sentences wouldn't be available? Right. And in particular, in particular, in that scenario where the second, the, where the shrapnel from the shotgun shell hit someone that the, that the defendant never intended to hit. I mean, that would be a set of, uh, a set of circumstances that although they would be responsible for both murders could be argued are the same course of events. So the same course of conduct to your position doesn't apply here. Absolutely not. That'd be the state's position. So consecutive sentence would be appropriate. Yes, could be. Okay. And that would be, uh, maximum would be 60 years on each, uh, conviction for a total of 120. I see that my time has expired. My answer your question. You may, you may answer. Uh, so yes, under, under the elected sentencing scheme. Yes, Your Honor. I have a final question for you, Mr. Robinson. I just want to go back for just a moment quickly, um, to ask you about this issue of Apprende on remand. Do you have any precedent in Illinois for the impaling of a special jury that, you know, I don't. And that's why I use the analogy, Your Honor of, um, uh, of the capital case. And if with the court's indulgence, I know I'm out of time, but I just another 30 seconds, cause this is an important issue. Um, I, I just don't see a way to, to marry, which I think this court has to do. I understand. I understand. And I think you've answered the question. I don't want to thank you overplay it too much, but you did answer the question. And, um, I appreciate you answering that question council rebuttal. Yes, Your Honor. Thank you. Um, I want to start by addressing council's reference to the statute, uh, section 581 subsection 581. Um, there is no way for the court to have sentenced Brian to a life sentence is 2019 under that statute. Section C says for only for defendants who at the time of their commission of the murder had attained the age of 18, Brian was under the age of 18. So nothing under section C applies to his case as to section. Yes. The first words, and it says the court shall sentence the defendant to a term of natural life imprisonment. If the defendant at the time of the commission of the murder had attained the age of 18, don't those first words, the court shall, I mean, those words matter. Yes, they do. But the second portion of that sentence says, if he had attained the age of 18 at the time of his offenses, he had not, this is not that he should be sentenced to life. If he was 18 at the time of sentencing, this is, he should be sentenced to life at the time of the offenses. This section doesn't apply to him. Well, why does it, the sentence prohibit the trial court in its discretion? In other words, uh, as Justice Holder-Wright pointed out, the statute takes the discretion away from the trial court with the court shall sentence the defendant if he's, uh, over 18 or over, but it seems to say nothing about what the court may or may not do with regard to someone who's younger. Which indicates that someone who's younger does not get a life sentence. Well, not mandatorily, but why does it indicate that he can't get a discretionary one? Because nothing under that subsection references people under the age of 18 at all. It would be, if the statute before had no, um, did not have that 18 or over provision, it was amended to include that 18 or over provision indicating that the legislator wanted to take out juveniles from the consideration of the life sentence under that section. Um, similarly under section A and B rather, he's not, uh, subject to a life sentence because as counsel points out, no jury found that the offenses in this, uh, that the offenses in this case were brutal or heinous indicative of wanton cruelty. Respectfully, counsel's anecdotes as to what happens in the trial court should not apply or guide this court because for several reasons, counsel started off by saying that he takes issue with all the forfeiture that the, uh, that we've pointed out in the reply brief, but it is true. The state forfeited a lot of the arguments it made during its argument. The state forfeited the Apprendi argument and, uh, the state forfeited the argument that, um, that on remand, that Apprendi does not apply to a resentencing case. It is not fair to Mr., uh, to Brian to have to make these responses in a two-minute, in a five-minute rebuttal to issues that the state forfeited. Let me ask a question that, uh, I think has come up. Uh, you had talked about the same course of conduct, uh, as applying and therefore, um, a consecutive sentence wouldn't be imposed. Could it be imposed? You heard Mr. Robinson's description of how the murders occurred in this case. Uh, do you, what, what is your claim that the same course of conduct description applies to these murders? Um, this is another one of the issues the state forfeited. As I explained in the opening brief, the fact that they were, uh, the same motive guided both murders. As Justice Holder-White pointed out, Brian killed his being kicked out of the house and being sent back. Why is a motive sufficient to make it the same course of conduct? I'm not familiar with any case law that says motive is enough. They've always included something to deal with the same sort of physical act which causes the death. Do they not? They were both murdered in the same manner. Um, the only difference between the two offenses, I mean, the two murders is the time, the time he waited for his grandfather to come home. It doesn't change the application? No, it does not. If I agree with you on that point, is then, and we think that the single course of conduct doesn't apply, then a consecutive sentence could be imposed, could it not? Yes. Um, if the, if the murders were not in a single course of conduct, then yes, the court might have, um, considered, could have given him consecutive sentence, but it doesn't affect the ineffective assistance. But your claim that the single course of conduct applies is based solely upon the motive, not governing the, the acts which actually caused the deaths? No, Your Honor. And again, it's explained in more detail in the briefs. The, the motive, the act. No, I understand. The motives, the acts, the manner in which his grandparents were killed is a single course of conduct. They don't have to be, um, as in your example, fired at with the same weapon and therefore, um, grandfather came home the next day. Would that still be the single course of conduct? It depends. Um, the, it depends on what links them, but the facts of this case show under the facts of this case, it was simply a single course of conduct under existing law. And Brian was not eligible for a consecutive sentence. Thank you, Counsel. The court will take this matter under advisement, and the court stands now in recess.